# IN THE COURT OF APPEALS OF IOWA

No. 20-1009
Filed October 7, 2020

**IN THE INTEREST OF D.H.,**
**Minor Child,**

**K.S., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Kristin L. Denniger, Mt. Vernon, attorney and guardian ad litem for minor child.


        Considered by Bower, C.J., and Doyle and May, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to her child, D.H.[1] Clear and convincing evidence establishes grounds for termination and shows termination is in D.H.'s best interest.[2]  We affirm.

We review termination proceedings de novo.  *In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *3 (Iowa 2020).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of parents' rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  "However, if a parent does not challenge a step in our analysis, we need not address it."  *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

---

[1] D.H.'s father is deceased.

[2] To the extent the mother attempts to challenge whether the State made reasonable efforts toward reunification or request additional time to work toward reunification, we find her arguments are not sufficiently developed for our review. *See In re K.M.*, No. 19-1637, 2020 WL 110408, at *3 n.6 (Iowa Ct. App. Jan. 9, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

The mother claims the State failed to satisfy the statutory grounds authorizing termination. The juvenile court found grounds authorizing termination under Iowa Code section 232.116(1)(h) (2020). Paragraph (h) authorizes termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element, whether D.H. could be returned to her care. The fourth element is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020). We find D.H. could not be returned to the mother's care.

The mother has a history of substance abuse, including methamphetamine and heroin use. Hair-stat tests for both the mother and D.H. came back positive for methamphetamine at the beginning of this case. And the mother tested positive for methamphetamine as recently as June 21, 2020, less than one month before the termination hearing.

We reiterate once again, "Methamphetamine is a scourge." *J.P.*, 2020 WL 110425, at *2; *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. We commend the mother

for entering residential treatment shortly before the termination hearing. But we cannot turn a blind eye to her history of relapse. We fear continued methamphetamine use is likely in the future.[3] *Cf. In re J.B.*, No. 18-0696, 2018 WL 4361058, at *3 (Iowa Ct. App. Sept. 12, 2018) (finding a child could not be returned to a parent when the parent had only been sober for three months). The mother's drug use prevented reunification. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of substance abuse).

In addition to our concerns about the mother's substance abuse, we find she does not have the tools necessary to care for D.H. At the time of the hearing, she was unemployed and was not looking for employment.[4] Her resulting financial instability prevents her from meeting D.H.'s basic needs. *See id.* (collecting cases finding children cannot be returned to a parent who lacks stable employment). And during a visit with D.H., the mother gave into D.H.'s cries for soda and gave D.H. Mountain Dew even though she "knew [she] shouldn't give it to her." While providing D.H. a treat is fairly benign in itself, this instance raises questions of whether the mother would make decisions with D.H.'s best interest in mind as opposed to only considering what would appease D.H. And parents must be able to effectively parent their children. *Cf. Z.P.*, ___ N.W.2d at ___, 2020 WL 5268435, at *4 (considering the father's age-inappropriate interaction with his child as

---

[3] An Iowa Department of Human Services social worker testified she shares our concern that "based on past history there is a good chance [the mother] will relapse."

[4] When asked if she was employed, the mother responded, "No. I can start searching for a job tomorrow."

weighing against reunification). That includes making decisions that serve the child's best interest despite being unpopular with the child. We question whether the mother has developed this skill.

Moreover, the mother seemed to concede D.H. could not return to her care, testifying, "If I get another chance to have more time, I promise I won't let anybody down." Given the mother's instability and substance abuse, we agree with her apparent concession and find a statutory ground authorizing termination satisfied.

Our next step centers on D.H.'s best interest. *See* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Like the juvenile court, we conclude termination is in D.H.'s best interest. As discussed, the mother has unresolved substance-abuse issues. She currently resides at an inpatient treatment facility and does not have concrete plans for a permanent home following her anticipated discharge.[5] And she does not have employment. Considering the mother's history of instability, we are not confident she will be able to adequately meet D.H.'s needs in the future. *See In re C.W.*,

---

[5] We acknowledge the mother shared plans to move into a halfway house upon completion of the inpatient treatment program. But she had not secured housing beyond those plans.

554 N.W.2d 279, 283 (Iowa Ct. App. 1996). So the second step in our analysis is complete.

Finally, we consider whether to apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent. *See A.S.*, 906 N.W.2d at 476.

The mother's petition on appeal mentions her "clear bond" with D.H. and that she "loves her very much." We assume she is attempting to invoke section 232.116(3)(c), which authorizes the court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But she does not specifically cite to section 232.116(3)(c) nor does she develop an argument beyond her brief reference to her bond with and love for D.H. So we conclude the mother has not met her burden of establishing an exception that would permit us to forgo termination.

We agree with the juvenile court and affirm.

**AFFIRMED.**